and v. The Sheriff of Jackson County Florida. Okay, Ms. Maddox. Thank you, Your Honor. I'm Marie Maddox on behalf of the appellant. I will report the court today to seeking to overturn the district court's ruling on summary judgment in favor of the defendants. And let me spend just a minute talking about the facts because the facts are . . . Well, let me talk a minute about the law, okay? And I only want to clarify something here, okay? So there's a Fourth Amendment claim here, right? Where there was an arrest warrant. So what we have is a process-based seizure, right? So the prosecution. Our law about that is super well settled, isn't it? Yes, it is. Yeah, so we ought not to be looking at false arrest law. We ought to be looking at malicious prosecution law, right? Your Honor, I would disagree. And the reason is that when we're talking about . . . This is super settled, Ms. Maddox. I'm looking at the Franks v. Delaware case and the other cases where there was a warrant, there was a . . . Sure. The way that the judge in this case had analyzed it was as a seizure case. And looking at the warrant to see if the warrant, the falsified facts in the warrant . . . Right, right. If you excise those, whether there was still sufficient probable cause or argument . . . Yeah, that goes to the probable cause element of the analogous tort. So probable cause is an element of the malicious prosecution tort, too. So looking at Franks doesn't change the fact that what we're talking about here . . . See, if you look at false arrest, you could be looking at a warrantless arrest, okay? That's not what we have here. We have a process-based seizure. That's why our court has held in lots of cases that in a process-based seizure, the tort is malicious prosecution, okay? Okay? All right. So if we excise these facts that are wrong, right, what we're left with is that this individual, your client, was the driver, right? Yes, sir. Of a vehicle that went to a predetermined drug deal, right? Yes, sir. Yes. His passenger got out of the car and there was a drug transaction for which the driver waited . . . Yes, sir. . . until it was completed and the purchaser of the drugs then got back in the car and they drove away, right? Yes, sir. Those facts are still correct. Yes, sir. And if those facts give rise to probable cause, then the claim fails. Absolutely. Absolutely. That's what we're really talking about because virtually every other fact here is wrong, but those facts at least you concede are right. Yes, I do. Why isn't that enough for probable cause? Because this court has held that the mere presence at the scene of a crime is not enough. You have to have particularized probable cause. Yes, but the problem is it's not just your buyer to the deal, waited for the deal to happen, and then once it was over, drove him away. Why couldn't . . . Why isn't that enough for . . . It's not preponderance. It's not reasonable doubt. It's not any of that. Why isn't that enough for probable cause? He could have believed . . . Couldn't he have believed that there was . . . that the driver knew what was going on? Not under these facts, and that's the problem. Is that what we have is a case similar to the United States versus Bergen case decided by this court in 2007, and the court looked to see whether there was an absence of probable cause by someone just being there, and that . . . More than just being there. This is taking the buyer to the predetermined drug deal, waiting for him, and then taking him away. I don't . . . Your Honor, I don't think it's any different than the Holmes case decided by this court in 2003, the Bergen case decided in 2007, and then the Armand case, the Northern District of Georgia, 2020 . . . Well, did . . . Counsel, did . . . In any of those cases, did the defendant in his vehicle after he drove him there, and the drug dealer got out to do his business, was that a situation in which two individuals who were with the drug dealer then got out of that vehicle and came around to the other one and sat with him? No, sir, but in the Armand case, where we have facts that are similar to this, and this is again the Northern District of Georgia last year, where the pimp driver actually waited, and waited until there were, you know, the transactions took place, and there were . . . The facts are very similar. There was evidence of human trafficking . . . But there weren't two people associated with and apparently involved in the drug deal, financial informants, nobody knew it at the time, who came out and sat with the defendant in his car, wasn't there? There weren't, but the problem is, is when you have Mr. Allen that doesn't know any of this, he's never . . . does not talk to the confidential informants, he doesn't talk to the undercover cop who was there, and he relies on . . . Well, isn't that in itself strange? Two people come out of another vehicle which you're told to park next to, the guy who tells you that gets out of the other vehicle, and two people get out of the other vehicle and come and sit with you, and you don't say boo to them about what's going on? No, he's there as a . . . it would be similar to an Uber driver, and he's a paid driver that is there at the . . . Could be, or could be a substantial likelihood that something was afoot, and he should know what he's talking about. And, you know, we have all those cases holding that drug dealers won't let innocent, uninvolved people near the drug transaction because they naturally don't want anybody who's in a position to go to the cops. Well, the problem is, if you look at the Ybarra case from the 11th Circuit, I'm sorry, from the U.S. Supreme Court, 1979, the U.S. Supreme Court . . . That was a public place where people were there to get a drink. Yes, sir. And as I recall, there were a number of people there. But the court . . . And because of probable cause involving the bartender or somebody else, the cops searched every single person in the bar. That's different. They didn't search every single person in the shopping center or wherever this commercial area was in this case. Your Honor, the legal principle, very respectfully, the legal principle from Ybarra is that there must be a particularized probable cause to the person's these. And I would beg to differ with the district court's conclusion. And the district court agreed that he had raised a question of fact as to whether the misstatements in the affidavit were fabricated. And so Judge Rogers held that. And then she went on to say, but I find that under the analysis for arguable probable cause, that I find that there were sufficient facts to justify even if you excise these false facts. The problem with that is if you look at the sequence of events that occurred in this case, including Martha Bellamy going immediately to tell Mr. Allen that he, that Tyler Land did not know what was going on. So the sequence of events is a false probable cause affidavit that is prepared by Mr. Allen on 6-24 of 2017. You then have a second false probable cause. And what counsel, what was the relationship of Ms. Bellamy to the plaintiff? She was someone that he knew and she had asked him. He had only met Mr. Smith six weeks or so before this incident happened. A friend. It was one of you. A friend. She's also done, but Your Honor, that's. You don't have to be embarrassed by it. Some of the worst people have got friends and some of the best people don't. I mean, can't you conceive that she was a friend? I can conceive that they were. And our cases to say that officers in deciding whether to arrest or not are not required to believe innocent explanations for conduct. But he told her to keep her mouth shut. Wait, let's settle out some things. Is any of that in the affidavit, in the warrant? No. The friendship? No. This is a process-based seizure, right? Yes. It's not a warrantless arrest, right? No. So, all right, let's get to the. Are there any facts? I grant you, there are a lot of facts in the warrant that are incorrect. We talked about which facts you agree are correct and whether that gives rise to probable cause or not. Then you talk about how the officer went back and has a second go at it. But that's never presented to a magistrate judge, is it? It is. From my reading of the record, I didn't see where that affected. He went and cleaned up some facts and maybe got some more facts wrong. But I'm not sure that that went to a magistrate and it didn't result in a new arrest warrant. It didn't affect his continued seizure as far as I could tell. His seizure is still based on the original arrest warrant and whatever erroneous and incorrect facts are in there, right? And there are a few correct facts in there, Your Honor. And the few correct facts are the ones that we took, we just discussed earlier and whether they give rise to probable cause is why we're here. Isn't that right? But that later, that later thing he files, does that ever, does that affect anything? Does that go back before a magistrate judge? Do you get a new arrest warrant? No, sir. But I'll tell you what did happen. Okay. Judge Mercer was concerned enough about the inconsistencies between these affidavits that he actually had a meeting with him, Judge Wade Mercer, with the sheriff about how bad the facts were and how they had been, they were inaccurate. And so that happened. But there's no new determination of probable cause. They don't, they don't have a new hearing to determine whether there continues to be probable cause. He's being held, he's being detained based on the original arrest warrant, isn't he? Yes, sir. But it says he knew, which he didn't have any evidence that he knew that Mr. Land knew anything. But I wanted to bring up one other point and I see that my time has expired on my, I need to. Okay. What's your one other point? My The judge relied, Judge Rogers relied upon the fact that Stephen Smith had given an affidavit and supported these facts. That wasn't done until January of 2017. So he didn't have that information at the time that he did the original affidavit, the warrant, the affidavit on 6-24. What we're here to decide in terms of a Fourth Amendment seizure claim, because it's a process based seizure, right, is whether the facts as excised under Frank's, the correct facts would have been enough to give rise to probable cause. Isn't that right? Yes, sir. And that's exactly what the judge found and that's what we disagree with. Okay. And that will also affect the state law, this malicious prosecution claim, right? It will. Okay. Ms. Yarbrough. My name is Alyssa Yarbrough and I represent the defendants in this case. And we're here to ask that you affirm the district court's ruling on the motion for summary judgment in which it found that Allen was entitled to qualified immunity and the sheriff was also entitled to summary judgment as a matter of law. You agree with me about this being a process based seizure and the analogous court we look at is malicious prosecution, not false harass? Yes, sir. Okay. Because a briefing about that was atrocious on both sides. I mean, it's just, we get malicious prosecution cases being cited, false harass cases. No one's got a clear conception, it seemed to me, of what we're actually trying to decide here. Yes, sir. It would be under the malicious prosecution, but the claims that were alleged by the plaintiff were based on the Fourth Amendment and then the 1983 false harass claims. So those were also addressed in an attempt not to leave any arguments that would exist. But it's not a false harass analysis, is it? It is not, Your Honor, no. Because it's a process based seizure. Correct, Your Honor, because there was a facially valid warrant as well. Which means that the police, or Mr. Allen in this case, needed to have more information in order to satisfy that legal process. I mean, the facts that were him just being there, the drug buy, et cetera. But if I understand the record correctly, there was actually a period of time when Allen was doing his allegedly due diligence to determine whether or not there were sufficient facts to support this warrant. And they didn't arrest Mr. Land on the scene. They arrested him at his home. So what do you believe was proper in terms of that time period that would otherwise support a conclusion that these were just mistakes as opposed to some other nefarious, perhaps, motivation to support the warrant? Well, Your Honor, there is no record evidence that any of Allen's misstatements were intentional or reckless. And in Franks v. Delaware, it was held that mere negligence is insufficient to invalidate a facially valid warrant. The original investigation that involved Mr. Land was conducted on June 14, 2016. But the bigger picture of that was that Mr. Smith, who was the target of the investigation, had been under investigation for some period of time, concluding with an arrest on June 23. Let me make sure I understand the law about something under Franks. I think we could even assume that some of the facts are recklessly or intentionally misstated. But Franks, the Supreme Court, would require us to excise those facts and determine whether the correct facts that remain are enough to establish probable cause. Isn't that right? That is right, Your Honor. And if those incorrect facts are removed, whether they were intentional or not... Then we are left with the very facts that I think I discussed with opposing counsel. Do you agree with me that while we are really then left with, when you take out all the facts, let's assume they are all intentionally misstated. The Supreme Court says we take them out of the equation and we are left with, he was a driver of a vehicle to a predetermined drug deal where the buyer got out of the car, did the transaction, got back in the car and he drove him away. Those are the only correct facts we have left that you would argue give rise to a determination of probable cause, right? Correct. And that is really what this case turns on, both in terms of the Fourth Amendment claim and the state law malicious prosecution claim, right? Correct. Correct in terms of at the scene of the event. But then you have a CI, if I understand the record correctly, who says that Mr. Land didn't know what was going on, didn't drive them with his intent to pursue a drug deal. And so again, my question is, why isn't the fact that there was some time between on the scene and when he was arrested to determine whether or not indeed this charge of being, I think it's a principal actor in a drug trafficking offense, actually was valid? Because, Your Honor, the arresting officer or the officer who is seeking the warrant doesn't have to take at face value what someone else who was also involved in the drug transaction says. It's the officer's job to determine whether or not there is sufficient probable cause that exists, or arguable probable cause, and then to submit that to an independent magistrate for review. The law is, the only thing we have to figure out is whether the remaining correct facts it presented to him, it's a magistrate judge who decides to issue the warrant, right? And we've got to figure out whether the magistrate judge was given enough correct facts to support probable cause. Correct. And then we fast forward and we have, as the Chief has emphasized, a malicious prosecution case on behalf of someone who spent almost seven months in jail on a charge that was ultimately dismissed. And the, I think, state attorney on the record says that she's okay with dismissing the case because his role was minimal, which had never been established since he had been convicted of being involved, and that six months was enough for him to serve for his minimal role, again, as if he had already served time for a crime that he was never convicted of. So how does that not support a malicious prosecution claim? Because for a malicious prosecution claim to stand, there has to be some furtherance of the act of the individual deputy to support the prosecution. And in this case, there was none. Well, I thought that there also had to be a lack of probable cause for the detention. There does, Your Honor. Under Florida law, there's... So it's the same analysis. If the warrant's correct facts stripping away the intentionally or recklessly incorrect facts are still enough to provide probable cause, then the malicious prosecution claim would fail, right? That's correct, Your Honor. Under Florida law, there are six elements, and all elements must be met in order for a malicious prosecution claim to survive. And in this situation, you had probable cause, with probable cause under the Fourth Amendment analysis, for a malicious prosecution, there is no malicious prosecution claim that can survive under the Fourth Amendment or under state law, because not all six elements are met. If those few facts that we've established, everyone agrees, are correct, are not enough for probable cause, then this case goes forward, doesn't it? Both on Fourth Amendment and state law malicious prosecution. If it's determined that there is not, that those facts do not establish probable cause, then it would go forward on Fourth Amendment and malicious prosecution under state law, but that's not the case here. I understand. I understand your point. You say it is enough for probable cause, right? Correct, Your Honor. And I would submit that case law also supports that it's enough for only probable cause, and then in Deputy Allen's position, arguable probable cause for entitlement to qualified immunity, which I think would prevent the malicious prosecution under the Fourth Amendment against him from going forward. We might not get to the claims, depending on how this decision plays out, with respect to the sheriff and the custom and policy argument of having an environment, essentially, that individuals or citizens. But I am curious what your position is in terms of the allegations, at least, that there have been several lawsuits filed against this particular sheriff's office that Allen had actually been disciplined before, that there were concerns about his activities on the street and his position. Do those facts not suggest a policy or custom or culture in the sheriff's office that supports this kind of behavior, which everyone at least acknowledges was negligent, if not reckless in some form? No, Your Honor. And the reason for that is the allegation regarding a particular deputy's propensity to do harm to the citizens of Jackson County occurred after the arrest in this case. So it would be insufficient to put notice on the sheriff at the time of this case. But also, it involved a deputy who was not involved in this case whatsoever. And that is why it's not sufficient to find negligence against the sheriff. Also, there is no policy, custom, or practice by Deputy Allen or any other deputy who was associated with this case of doing harm to any of the citizens, specifically the plaintiff in this case. As this Court mentioned, the undisputed record evidence establishes that probable cause existed based on the plaintiff's involvement and his fervor of participation in the pre-arranged drug sale by driving Scott Smith to the location where the drug transaction occurred, waiting until Scott Smith finished the drug transaction, and then getting back into the vehicle and driving. And to the point regarding plaintiff's contention that Ms. Bellamy went to Deputy Allen and made the statement that Land was not involved, the record evidence establishes that she also testified that everyone in the situation knew what was going on. So that doesn't create a genuine issue of material fact sufficient to defeat summary judgment in this case. And we would ask that the Court affirm the lower court's ruling in granting Defendant Allen qualified immunity and summary judgment as to all claims in this case, because the plaintiff has failed to meet its burden, and the burden is on the plaintiff. Thank you, Ms. Yarbrough. Ms. Maddox, you have three minutes. First, let me say that if you excise all of the false facts from the probable cause affidavit filed as 92-91-2, it is impossible to find that there was any probable cause, arguable probable cause, straight probable cause, because it... Those facts are just the ones, though, that we went over earlier, right? It was the driver of a vehicle to a predetermined drug deal who waits for the drug deal to happen. After it's over, the buyer gets back in his car and he drives him away. Those are the correct facts, and those are all the facts. And it's just really a question of whether that gives rise to probable cause or not. Right, Ms. Maddox? And the false facts that are in here, for example, that it took place inside his vehicle... We have to just disregard them, right? Yes, and there's nothing left. And that's the problem, is that once... What's left is just what we talked about. Really? What's left are that he was a driver to a predetermined drug deal, the drug buyer got out, he waited for the transaction, the buyer got back in the car and he drove him away. That's all we got, right? That's all we have, but we don't have the knowledge in which they put in this probable cause affidavit the earlier transactions that took place, positively identified as the driver and the person being present. And so, and it also says... Oh, I know what we, I know the facts that are wrong, that I'm supposed to disregard, Ms. Maddox. That just doesn't help me very much in determining whether, I mean, the only point here is this, the Supreme Court tells us we strip those facts out, right? Yes, sir. Don't consider them. Yes, sir. You keep telling me to consider them. No, what I'm saying is once you take it out, you've got nothing left, and that's my whole argument. Not enough left. No. That's your argument. My whole entire argument. And let me address, if I could very quickly, the custom and practice argument. We've argued not only custom and practice, we've also argued ratification. And the importance of Roy Bedard's papers, his expert witness opinion, is that there were, and it is important to look at what happened to Zach Wester, the drug planning deputy. He's all over the news. He's been convicted of it. And that Zach Wester, another officer, were planning drugs, and to see the tacit approval and no oversight at all of these folks, and that's what Mr. Bedard had identified and talked about in his hundred-something page report. And so we've got the ratification of it, and we also have the custom and practice to show that this was a practice that the Sheriff's Office did nothing about. Thank you, Ms. Maddox. We have your case. We're going to be in recess until tomorrow. Thank you.